IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DILLON L. BRACKEN, ) | Civ. No. 11-00784 SOM/BMK |
| ) | |
| Plaintiff/ ) | |
| Counterclaim ) | ORDER DENYING BRACKEN'S |
| Defendant, ) | MOTION FOR SUMMARY JUDGMENT |
| ) | REGARDING COUNTERCLAIM |
| vs. ) | |
| ) | |
| KYO-YA HOTELS AND ) | |
| RESORTS, LP; KINCHUNG ) | |
| CHUNG; JOHN DOES 1-9; ) | |
| DOE ENTITIES 1-5; and ) | |
| AARON H. OKURA, ) | |
| ) | |
| Defendants/ ) | |
| Counterclaim ) | |
| Plaintiffs. ) | |
| _____ ) | |

**ORDER DENYING BRACKEN'S MOTION FOR SUMMARY
JUDGMENT REGARDING COUNTERCLAIM**

This action arises out of what Plaintiff/Counterclaim Defendant Dillon Bracken says was an attack on him by security personnel when he tried to enter Rumfire, a Kyo-ya Hotels and Resorts ("Kyo-ya") restaurant in Hawaii, on New Year's Eve in 2009. Bracken is a California resident who alleges that Kyo-ya and certain individuals violated his constitutional rights and committed multiple torts in response to what they allegedly viewed as his trespass. Kyo-ya has filed a counterclaim alleging that Bracken negligently caused injuries to Kyo-ya Security Officer Julio Bagaoisan as Bracken left the hotel. Bracken moves

for summary judgment on Kyo-ya's counterclaim. The court denies Bracken's motion.[1]

## I. BACKGROUND.

On December 31, 2009, Bracken went to the RumFire restaurant. He says he was "unaware that it was supposedly closed to the public" for a private New Year's Eve celebration. Fourth Am. Compl. ¶ 23, ECF No. 60. Bracken alleges that a private plainclothes Kyo-ya security guard "abruptly grabbed [him] by his shoulder." Id. ¶ 24. Thinking that the security guard was an intoxicated RumFire patron "trying to pick a fight," Bracken says he "tried to avoid any altercation with him." Id. ¶ 25. Bracken claims his efforts to get away from Okura were "thwarted" by security personnel. Id. ¶ 26. Bracken asserts that security personnel subjected him to a "protracted procedure for warning persons that they would be considered trespassers," which included detaining him as an alleged trespasser and photographing him. Id. ¶¶ 28-30. Kyo-ya's "standard operating procedure" was allegedly to take and retain the alleged trespasser's identifying documents until the individual submitted to the procedure. Id. ¶ 30. Bracken alleges that security guards unlawfully restrained him and abusively injured him in the process. Id. ¶ 34.

---

[1] The court decides this matter without a hearing. See Local Rule 7.2 (d).

After he was released, Bracken allegedly attempted to leave the area on his motorcyle. Kyo-ya alleges that Bracken, "along with an unidentified female companion, caused property damage to a white Mercedes vehicle, which had been parked at the Porte Cochere of the Hotel, when the motorcycle owned by Plaintiff fell onto the white Mercedes." Am. Countercl. ¶ 2. Kyo-ya asserts, "Security Officer Julio Bagaoisan was called to investigate this property damage and while [Bagaoisan was] within the course of his investigation, Plaintiff got on his motorcycle and attempted to flee the scene of the accident." Id. ¶ 3.

Violet Mangene was Bracken's "unidentified female companion" that evening. According to her, Bracken asked her to "go get his bike." Mangene Dep. at 32, ECF No. 115-5. She later discovered that Bracken made this request because his motorcycle was at the hotel, and he was not allowed on the hotel property given his alleged trespass offense earlier that evening. Id. at 40. Mangene says that she tried to help Bracken by moving his motorcycle, but the motorcycle was so heavy that she could not keep it from falling against the Mercedes. Id. at 38. Mangene describes the resulting scene as a "big deal" involving approximately five hotel employees who were investigating the incident. Id. at 41. She says she called Bracken and told him he would have to get his own motorcycle. Id. at 43. Once Bracken arrived, Mangene told the hotel employees that the keys

3

to the motorcycle were in the bushes (even though they were actually in the ignition) so that Bracken could get on the motorcycle and ride away. Id. at 46.

According to Bagaoisan, he was taking pictures as part of the investigation when he heard "several of the valet attendants yell, 'He's coming, he's coming.'" Bagaoisan Decl. ¶ 5, ECF No. 115-2. Bagaoisan says he "instinctively responded to this action by reaching for the motorcycle." Id. ¶ 6. Bagaoisan says he "was dragged several feet, and tumbled several feet more, and sustained injuries in the process." Id. ¶ 7. Bagaoisan complains that Bracken "did not ask permission to remove the motorcycle and did not allow [him] to complete his investigation before speeding away." Id. ¶ 8.

Bracken says that once he got on his motorcycle, he "left immediately," and that Bagaoisan was "attacking [him] at the time." Bracken Dep. at 4, ECF No. 83-2. Bracken says he "had no knowledge of who was attempting to throw [him] off the bike" but, "given [his] recent experience" at Kyo-ya, assumed "that it was someone from that organization also attempting to attack me." Id. at 5. Bracken says that he never saw Bagaoisan because Bagaoisan allegedly attacked him "from the back." Id. Bracken admits that he did not ask for permission to take his motorcycle, but he also says that he had been at RumFire multiple times before and "eventually stopped feeling the need to talk to

4

people about stuff that is clearly all right." Bracken Dep. at 116, ECF No. 115-4.

Kyo-ya alleges that Bagaoisan "attempted to prevent Plaintiff from fleeing the scene of the accident, and was dragged a distance and sustained physical and emotional injuries." Id. ¶ 4. Kyo-ya also alleges that Bracken "operated his motorcycle in a reckless and unlawful manner" and caused Bagaoisan's injuries by "intentional and/or negligent conduct." Id. ¶ 5. Kyo-ya paid worker's compensation benefits to Bagaoisan, id. ¶ 6, and now seeks reimbursement for those benefits and additional damages.

**II.     STANDARD.**

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be

an essential element at trial.  See Celotex, 477 U.S. at 323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987.  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

"A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003).  Accord Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  Miller, 454 F.3d at 988 (quotations and brackets omitted).

**II.    ANALYSIS.**

To prevail on a negligence claim, a claimant must prove:

> (1) A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;
>
> (2) A failure on the defendant's part to conform to the standard required: a breach of the duty;
>
> (3) A reasonably close causal connection between the conduct and the resulting injury[;] and
>
> (4) Actual loss or damage resulting to the interests of another.

Takayama v. Kaiser Found. Hosp., 82 Haw. 486, 498-99, 923 P.2d 903, 915-16 (1996) (quoting Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 385, 742 P.2d 377, 383 (1987)).

A viable negligence claim requires that a defendant have owed a duty to the plaintiff. See Pulawa v. GTE Hawaiian Tel, 112 Haw. 3, 11, 143 P.3d 1205, 1213 (2006); Janssen v. Am. Haw. Cruises, Inc., 69 Haw. 31, 34, 731 P.2d 163, 34 (1987). The Hawaii Supreme Court has stated:

> [I]n considering whether to impose a duty of reasonable care on a defendant, we recognize that duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. Legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done. In determining whether or not a duty is owed, we must weigh the considerations of policy which favor the plaintiff's recovery against those which favor limiting the defendant's liability.

7

> The question of whether one owes a duty to another must be decided on a case-by-case basis.

Id. at 12, 143 P.3d at 1214 (quotations and citation omitted) (format altered).

The Hawaii Supreme Court has identified several factors relevant to imposing a duty:

> Whether a special relationship exists, the foreseeability of harm to the injured party, the degree of certainty that the injured party suffered injury, the closeness of the connection between the defendants' conduct and the injury suffered, the moral blame attached to the defendants, the policy of preventing harm, the extent of the burden to the defendants and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

Id. (quotations and citation omitted) (format altered).

A defendant owes a duty of care only "to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous." Id. (quotations and citations omitted). In this context, the test for foreseeability "'is whether there is some probability of harm sufficiently serious that a reasonable and prudent person would take precautions to avoid it.'" Pulawa, 112 Haw. at 12, 143 P.2d at 1214 (quoting Knodle, 69 Haw. at 388, 742 P.2d at 385). Whether a duty exists is a question of law for the court to resolve. Pulawa, 112 Haw. at

13, 143 P.2d at 1215; Janssen, 69 Haw. at 34, 731 P.2d at 34 ("The existence of a duty is a question of law.").

Bracken owed a duty to those around him to operate his motorcycle in a lawful and safe manner. Whether Bracken breached that duty is the kind of issue typically left for a jury to determine. See Bidar, 66 Haw. at 552, 669 P.2d at 159. "Ordinarily, issues of negligence . . . are not susceptible of summary judgment." Henderson v. Professional Coatings Corp., et al., 72 Haw. 387, 400, 819 P.2d 84, 92 (1991). This is because the duty to use due care "is bounded by the foreseeable range of danger." Bidar, 66 Haw. at 552, 669 P.2d at 159. In this context, foreseeability is different from foreseeability for purposes of determining whether there is a duty. In the context of breach of duty and causation, foreseeability is a question of fact for the jury to decide. See Pulawa, 112 Haw. at 13, 143 P.2d at 1215. In other words, "what is reasonable and unreasonable and whether the defendant's conduct was reasonable in the circumstances are for the jury to decide." Knodle, 69 Haw. at 387, 742 P.2d at 384. Only when facts are undisputed or lend themselves to only one reasonable interpretation or conclusion may a court decide the question of negligence as a matter of law. Henderson, 72 Haw. at 400, 819 P.2d at 92.

Whether Bracken breached his duty of care is in disupte. Bagaoisan admits that he reached for the motorcycle

while Bracken was leaving the hotel on his motorcycle.  See Bagaoisan Dep. ¶ 6.  But Bracken, Mangene, and Bagaoisan give different accounts of the circumstances of Bracken's departure, rendering whether Bracken breached the duty of care unresolvable on this motion.

Kyo-ya argues that Bracken was "totally freaked out, totally out of control."  Opp'n at 5.  Kyo-ya also claims that Bracken was illegally trespassing, id., and that Bracken was aware that his motorcycle had fallen against another vehicle and caused property damage.  Id. at 5-6.  Finally, Kyo-ya argues that, because of the property damage, Bracken violated the law by leaving the scene of the accident before aid and information had been supplied.  Id. at 6.

Bracken disputes all of what Kyo-ya asserts.  Whether Bracken breached his duty of care hinges on the fact-finder's determination of which witnesses to believe.  The court concludes that issues of fact preclude summary judgment.

**IV.     CONCLUSION.**

The court denies Bracken's motion for summary judgment with respect to Kyo-ya's Amended Counterclaim.

IT IS SO ORDERED.

DATED: Honolulu, January 25, 2013.



/s/ Susan Oki Mollway

Susan Oki Mollway
Chief United States District
Judge

Bracken v. Kyo-ya Hotels and Resorts et al., Civ No. 11-00784 SOM/BMK; ORDER DENYING MOTION FOR SUMMARY JUDGMENT REGARDING COUNTERCLAIM