IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DILLON L. BRACKEN,   )  CIVIL NO. 11-00784 LEK-BMK
           )
    Plaintiff,  )
           )
  vs.       )
           )
AARON H. OKURA; KINCHUNG )
CHUNG; JOHN DOES 1-9; and DOE )
ENTITIES 1-5,     )
           )
    Defendants,  )
           )
and        )
           )
KYO-YA HOTELS AND RESORTS, )
L.P., a foreign Limited  )
Partnership;     )
           )
    Defendant and )
    Counterclaim  )
    Plaintiff.  )
_____ )

**ORDER (1) GRANTING DEFENDANT AND COUNTERCLAIM PLAINTIFF KYO-YA AND DEFENDANT AARON OKURA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983, (2) GRANTING DEFENDANT KINCHUNG CHUNG'S MOTION FOR SUMMARY JUDGMENT, AND (3) DENYING PLAINTIFF'S <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Before the Court are: (1) Defendant/Counterclaim

Plaintiff Kyo-ya Hotels and Resorts, L.P. ("Kyo-ya"), and

Defendant Aaron Okura's ("Okura")[1] Motion for Partial Summary

---

[1] Kyo-ya and Okura are referred to together as the "Kyo-ya Defendants" throughout. Chung and the Kyo-ya Defendants are collectively referred to as "Defendants."

Judgment on Plaintiff's Claims Under 42 U.S.C. § 1983, filed December 18, 2012 ("1983 Motion"), [dkt. no. 103;] (2) Defendant Kinchung Chung's ("Chung") Motion for Summary Judgment, filed December 18, 2012 ("Chung's Motion"), [dkt. no. 104;] and (3) Plaintiff Dillon L. Bracken's ("Plaintiff") Motion for Partial Summary Judgment, filed December 18, 2012 ("Plaintiff's Motion"), [dkt. no. 107].  The Kyo-ya Defendants filed their memorandum in opposition to Plaintiff's Motion on May 14, 2013.  [Dkt. no. 145.]  Plaintiff filed his memorandum in opposition to the 1983 Motion on May 21, 2013, [dkt. no. 149,] and to Chung's Motion on May 20, 2013, [dkt. no. 148].  Plaintiff filed his reply on May 25, 2013.  [Dkt. no. 150.]  The Kyo-ya Defendants filed their reply on May 28, 2013, [dkt. no. 151,] and Chung filed his reply on the same day, [dkt. no. 152].

These matters came on for hearing on June 10, 2013. Appearing on behalf of Plaintiff was Charles S. Lotsof, Esq., appearing on behalf of the Kyo-ya Defendants was Adrian Y. Chang, Esq., and appearing on behalf of Chung was D. Scott Dodd, Esq. After careful consideration of the motions, supporting and opposing memoranda, the arguments of counsel, and the relevant legal authority, the 1983 Motion is HEREBY GRANTED, Chung's Motion is HEREBY GRANTED, and Plaintiff's Motion is HEREBY DENIED.

## **BACKGROUND**

This action arises out of what Plaintiff alleges was an attack on him by security personnel when he tried to enter Rumfire, a Kyo-ya restaurant in Honolulu, on New Year's Eve in 2009.  Plaintiff alleges that Chung was working at Rumfire as a special duty police officer, meaning that, although he was a Honolulu Police Department ("HPD") officer, he "work[ed] with and alongside" Kyo-ya's in-house security guards.  [Fourth Amended Complaint, filed 7/13/12 (dkt. no. 60), at ¶ 55.]  Chung was "wearing clothing that identified him as an officer of the Honolulu Police Department."  [Id. at ¶ 38.]

Plaintiff alleges that he entered RumFire "unaware that it was supposedly closed to the public" for a private New Year's Eve celebration.  [Id. at ¶ 23.]  Plaintiff states that Okura, a private plainclothes Kyo-ya security guard "abruptly grabbed [him] by his shoulder."  [Id. at ¶ 24.]  Thinking that Okura was an intoxicated RumFire patron "trying to pick a fight," Plaintiff says he "tried to avoid any altercation with him."  [Id. at ¶ 25.]  Plaintiff claims his efforts to get away from Okura were "thwarted" by Chung.  [Id. at ¶ 26.]  Plaintiff asserts that he "repeatedly stated that he was trying to leave the premises and implored Defendants Okura and Chung to stop preventing him from leaving," but that Okura and Chung "blocked [his] egress."  [Id. at ¶¶ 46, 47.]

Plaintiff alleges that Okura, together with "additional

security guards employed by [Kyo-ya], including a person in a supervisory position, participated in the attack on [Plaintiff], restrained [his] freedom, abducted him and injured him." [Id. at ¶ 34.] Plaintiff further alleges that Chung "had the opportunity to intercede," but failed to stop the Kyo-ya security guards from assaulting him. [Id. at ¶ 47.] Instead, Plaintiff alleges, Chung "repeatedly demanded [Plaintiff's] identification even after Defendant Okura had by force pinned [Plaintiff's] left arm so that he could not retrieve any identification." [Id. at ¶ 44.] Plaintiff complains that "Chung exhibited hostility" toward him, and "engaged in making demands" on him, "all the while ignoring the fact that others were illegally attacking him." [Id. at ¶ 42.] Besides failing to "interfere with the assault" or "take any steps to prevent it," Chung allegedly failed to "confront the perpetrators." [Id. at ¶ 43.]

Plaintiff asserts that he suffered the following injuries from the New Year's Eve incident:

> (a) deprivation of freedom and liberty during the time he was being attacked and pinned on the ground by agents and employees of Defendant Kyo-ya Hotels and Resorts, as well as during the time his movement away from Defendants and their premises was restrained; (b) loss of consciousness; (c) larynx and vocal cord injury, causing pain, and inconvenience; (d) bruising of his wrists; (e) physical pain; (f) temporary inability to speak above a hoarse raspy whisper; (g) emotional distress and depression; (h) interference with the right to be secure in his person[;]
> (i) deprivation of the right of equal protection of law secured to him by the Fifth and Fourteenth

Amendments to the United States Constitution[;]
(j) deprivation of the rights and privileges
secured to other citizens[;] and (k) incurring
medical and allied expenses.

[Id. at ¶ 70.]

Plaintiff's Fourth Amended Complaint[2] asserts eight

causes of action: (1) "Negligence in Operating Public

Accommodation and Premises Liability" against Kyo-ya (Count 1);

(2) "Negligence in Employing and Training" against Kyo-ya (Count

2); (3) "Assault, Battery, Intentional Infliction of Emotional

Distress, False Imprisonment, and Wrongful Detention" against

Kyo-ya, Okura, and Chung (Count 3); (4) "Deprivation of Civil

Rights in Violation of 42 U.S.C. § 1983" against Kyo-ya, Okura,

and Chung (Count 4); (5) "Failure to Intercede, Denial of Civil

Rights" against Kyo-ya and Chung (Count 5); (6) "Potential Cover-

Up Resulting in Denial of Civil Rights" against Kyo-ya and Chung

(Count 6); (7) "Common Law Torts: Exercising Excessive Force"

against Okura and Kyo-ya (Count 7); and (8) "Claims Pursuant to

---

[2] Although the instant motions address what is referred to as the "Fourth Amended Complaint," that document actually operates as a First Amended Complaint. A different document bearing the title "First Amended Complaint" was filed after the period for amendments as of right under Rule 15(a) of the Federal Rules of Civil Procedure and without leave of court. That document was then superseded by a "Second Amended Complaint," which this district court dismissed because it had been filed without leave of court. Plaintiff then moved for leave to file a "Third Amended Complaint," only to withdraw that motion and substitute a motion seeking leave to file the present "Fourth Amended Complaint." That motion was granted. [Dkt. no. 57.]

42 U.S.C. §§ 1983 et seq. Actions Under Color of Law" against all
defendants (Count 8).

        In a November, 13, 2012 Order Granting in Part and
Denying in Part Defendant Kinchung Chung's Motion to Dismiss
Fourth Amended Complaint ("11/13/12 Order"), this district court[3]
dismissed as against Defendant Chung Counts 6 and 8.  Bracken v.
Kyo-ya Hotels & Resorts, LP, Civ. No. 11-00784 SOM/BMK, 2012 WL
5493997 (D. Hawai`i Nov. 13, 2012).[4]

## I.   1983 Motion

        In the 1983 Motion, the Kyo-Ya Defendants argue that
Bracken's § 1983 claims against them should be dismissed because
they did not engage in state action.  The Kyo-ya Defendants note
that the Ninth Circuit has stated that private parties are not
generally acting under color of state law.  [Mem. in Supp. of
19823Motion at 4 (citing Price v. State of Hawaii, 939 F.2d 702,
208 (9th Cir. 1991)).]  The Kyo-ya Defendants emphasize that
individuals and private entities are normally not liable for
alleged constitutional violations, and that the ultimate issue in
determining whether a person is subject to suit under § 1983 is

_____

        [3] This case was reassigned to this Court on March 27, 2013.
[Dkt. no. 127.]

        [4] This district court also issued an Order Denying Bracken's
Motion for Summary Judgment Regarding Counterclaim on January 25,
2013.  Bracken v. Kyo-ya Hotels & Resorts, LP, Civ. No. 11-00784
SOM/BMK, 2013 WL 314752 (D. Hawai`i Jan. 25, 2013).

whether the alleged infringement of a federal right is fairly attributable to the government.  [Id.]

Here, the Kyo-ya Defendants argue, it is undisputed that Kyo-Ya and Okura are not, and have never been, governmental actors or entities for purposes of § 1983.  The Kyo-ya Defendants acknowledge that there is an exception to the general rule of non-liability of private actors under § 1983: if a private party conspires with state officials to violate constitutional rights, that private party may then qualify as a state actor.  Here, however, the Kyo-ya Defendants argue, no facts support a claim that a conspiracy existed between the Kyo-ya Defendants and Officer Chung or some other state official to deprive Plaintiff of his constitutional rights.  [Id. at 6-7.]

As such, the Kyo-ya Defendants urge the Court to grant summary judgment in their favor with respect to Bracken's § 1983 claims against them.

A.  **Plaintiff's Opposition**

In his memorandum in opposition to the 1983 Motion, Plaintiff argues that his § 1983 claims against Kyo-ya and Okura may go forward, notwithstanding the fact that they are private actors, because a private party becomes a state actor for purposes of § 1983 when it engages in activity in which a police officer participates.  [Mem. in Opp. to 1983 Motion at 2 (citing Chapman v. Higbee Co., 319 F.3d 825 (6th Cir. 2003)).]  Plaintiff

7

asserts that, where there is police participation creating an appearance that the police sanction a private activity, there is state action. [Id. at 2-3.] Further, Plaintiff argues that determining the "overall effect of the presence of a uniformed policeman requires a case-by-case analysis," and summary judgment is therefore inappropriate. [Id. at 4.] Here, the Fourth Amended Complaint alleges that Chung held Plaintiff back, "thwarting" his efforts at escape, and detaining Plaintiff on behalf of Okura and Kyo-ya. [Id. at 4 (citing Fourth Am. Complaint at ¶¶ 26, 42-50).] As such, Plaintiff argues, Chung was "instrumental in Plaintiff's being in jeopardy of an attack by others." [Id. at 5.]

Plaintiff further argues that the Kyo-ya Defendants are responsible as co-participants with Chung in the alleged civil rights violations. Plaintiff asserts that Chung's involvement was "inextricably intertwined" with the Kyo-ya employees' actions and, thus, all are jointly and severally liable. Plaintiff argues that he has presented evidence that, had Chung not been present, the Kyo-ya security guards would have followed their normal protocol for dealing with a person who refuses to provide identification but states that he will leave of his own accord, and would have let Plaintiff go. [Id. at 7.]

Plaintiff argues that Chung "set the example" for the Kyo-ya employees and acted in concert with them, and therefore

8

Plaintiff has sufficiently alleged his § 1983 claim against the Kyo-ya Defendants.  [Id. at 7-8.]  Plaintiff therefore urges the Court to deny the 1983 Motion.

      **B.**   **Reply**

      In their reply, the Kyo-ya Defendants argue that Plaintiff fails to cite any facts supporting his allegations that Chung exerted control over Plaintiff or that, as a result of Chung's actions, the Kyo-ya employees were "emboldened" in their actions.  [Reply to Mem. in Opp. to 1983 Motion at 2.]  The Kyo-ya Defendants argue that Plaintiff cannot overcome summary judgment on mere assertions, absent factual evidence supporting his claim of state action.

**II.**  **Chung's Motion**

      Chung moves for summary judgment on all of Plaintiff's remaining claims against him: state law claims for assault, battery, intentional infliction of emotional distress ("IIED"), false imprisonment, and wrongful detention (Count 3); deprivation of civil rights in violation of 42 U.S.C. § 1983 (Count 4); and failure to intercede, denial of civil rights (Count 5).

      First, Chung argues that he is entitled to summary judgment because Plaintiff has produced no evidence that Chung took any affirmative actions against Plaintiff, breached any duties he owed Plaintiff, or otherwise committed any tort against Plaintiff.  [Mem. in Supp. of Chung's Motion at 8.]  Chung

9

asserts that he did not touch Plaintiff in any manner, nor did he detain or seize him.  Further, Chung emphasizes, there is no allegation that he acted with malice or an otherwise improper purpose toward Plaintiff.  [Id. at 8-9.]

Second, Chung argues that probable cause existed for the initial detention of Plaintiff and, therefore, no constitutional rights were violated.  [Id. at 10-11 (citing Chung's Separate and Concise Statement of Facts in Support of Motion for Summary Judgment ("Chung's CSF"), Declaration of Kinchung Chung ("Chung Decl."), at ¶¶ 3-5).]

Third, Chung argues that Plaintiff's § 1983 claims for unreasonable seizure and use of excessive force must fail because Plaintiff has failed to demonstrate any "state action."  Even assuming Plaintiff was improperly seized or inappropriate force was used, Chung argues, the facts do not suggest that Okura was a "state actor" or that Okura and Chung could be said to be "fellow officers" such that state action exists.  [Id. at 14-15.] Further, Chung argues, Plaintiff has failed to set forth any evidence demonstrating that a conspiracy existed among Chung and the Kyo-ya Defendants.  [Id. at 12.]

Fourth, Chung argues that, even if the Court determines that there was state action and that Chung did participate in any alleged torts, Chung is nevertheless shielded from liability by qualified immunity.  [Id. at 19.]

Fifth, Chung argues that he is entitled to the defense of conditional privilege with respect to Plaintiff's state law claims. Chung notes that, under Hawai`i law, for a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing evidence that the official was motivated by malice and not by an otherwise proper purpose. Chung argues that Plaintiff has failed to do so. [Id. at 21.]

Finally, Chung argues that Plaintiff is not entitled to punitive damages against Chung, as Plaintiff has not demonstrated by clear and convincing evidence that Chung acted wantonly, oppressively, or maliciously. [Id. at 21-22.] Chung therefore asks the Court to grant his motion as to all claims against him.

## A.   **Plaintiff's Opposition**

In his memorandum in opposition, Plaintiff argues that Chung's assertion regarding probable cause is incorrect and that Plaintiff disputes Chung's version of the facts. [Mem. in Opp. to Chung's Motion at 2.]

Plaintiff argues that Chung's involvement in the confrontation made Plaintiff feel he was unable to leave, and that Chung knew the situation was escalating but did not intercede, thereby "embolden[ing]" the other security guards. [Id. at 3-4.] Plaintiff emphasizes that the Defendants were not authorized to use force to detain him in order to issue a written

11

trespass violation, and argues that merely getting into an argument with a police officer or failing to cooperate is not illegal or grounds for detention. [Id. at 4-5.] Plaintiff argues that the evidence demonstrates that, because there was a police officer present, he was treated differently than other trespassers. [Id. at 6.]

Plaintiff further argues that, contrary to Chung's assertions, there is evidence demonstrating that Okura and other security guards did physically injure him and carry him forcibly to the basement security office. [Id. at 7-8 (citing Stipulation Admitting Video-recording into Evidence, Exh. A (video recording), filed 12/19/12 (dkt. no. 110), at 2:47-4:50; 8:15-9:25).] Plaintiff asserts that the video clearly shows that Chung was blocking his exit and standing very close to him. [Id. at 8.] Plaintiff argues further that the video establishes that Chung participated in the "abduction," and "condoned the beating." [Id. at 8-10.]

B.   **Reply**

In his reply, Chung argues that, in order to prevail on Count 3 (the state law claims), Plaintiff must establish that Chung aided and abetted Okura, or engaged in a conspiracy in which Okura and Chung had a criminal or unlawful purpose and used criminal or unlawful means to accomplish the objective. [Reply to Mem. in Opp. to Chung's Motion at 4-5.] Chung argues that

12

Plaintiff has failed to produce any evidence that he either aided and abetted Okura, or that he conspired with Okura.  Chung emphasizes that the video indicates only that Chung was present when Plaintiff was stopped and that he asked Plaintiff for identification.  [Id. at 5.]

As to Count 4 (the § 1983 unlawful seizure claim), Chung argues that Plaintiff's actions would have provided a reasonable officer on the scene probable cause to believe that Plaintiff was trespassing.  [Id. at 6-7.]  Chung argues that, once he reasonably believed Plaintiff had committed a trespass, probable cause existed, and Chung was permitted to stop him and ask for identification.  [Id.]  Chung further argues that he was not "fundamentally involved in the alleged violation of Plaintiff's constitutional rights" and therefore cannot be held liable.  [Id. at 9-10 (quoting Monteilh v. Cnty. of Los Angeles, 820 F. Supp. 2d 1081, 1088-89 (C.D. Cal. 2011)).]

As to Count 5 (the § 1983 failure to intercede claim), Chung argues that he cannot be liable for failing to intercede because Okura was a private security officer, not a law enforcement officer.  [Id. at 11-12.]  Further, Chung argues, Plaintiff has failed to produce any evidence that Okura and Chung were somehow acting in concert.  [Id. at 13.]

III. **Plaintiff's Motion**

Plaintiff seeks summary judgment as to Count 3 (the

state law claims of "Assault, Battery, Intentional Infliction of
Emotional Distress, False Imprisonment, and Wrongful Detention")
against the Kyo-ya Defendants.  Plaintiff argues that neither his
failure to provide identification, nor the Kyo-ya Defendants'
purpose of issuing an unofficial trespass warning, constituted a
justification for the "offensive touching" of his person.
[Plaintiff's Motion at 1-2.]  Plaintiff notes that the defense of
justification is available only where the actor believes his
conduct is necessary to avoid imminent harm, and even then only
if the harm the actor would cause is outweighed by the harm the
victim will immanently commit.  [Id. at 2.]  Plaintiff argues
that Okura and the other Kyo-ya guards cannot reasonably argue
that the harm they allegedly inflicted on him is outweighed by
potential harm to others.  [Id.]

        Plaintiff argues that he has clearly established that
"Okura initiated an offensive physical contact against
[Plaintiff's] person."  [Id. at 3.]  He states that the video
indicates that Okura stood very close behind him and that, after
the video camera was dropped, the sounds of the video that follow
indicate that Plaintiff was physically taken away by Kyo-ya
personnel.  [Id.]  Further, Plaintiff states that a photograph
taken by Paul L. Klink, a restaurant patron who saw and
photographed the altercation, clearly shows Okura pinching
Plaintiff's face as Plaintiff lies on the ground with Okura on

14

top of him.  [Id. (citing Plaintiff's Motion, Exh. C (Photograph)).]

As such, Plaintiff argues that he has clearly established that he was assaulted, that the use of force was out of proportion, and that he was forcibly taken to the security office without his consent.  [Id. at 4.]

A.   **Kyo-ya Defendants' Memorandum in Opposition**

In their memorandum in opposition, the Kyo-ya Defendants argue that the material facts concerning the incident remain in dispute and that, therefore, summary judgment should be denied.  The Kyo-ya Defendants note that Plaintiff's friend, Paul Klink, testified that, on the night in question, Rumfire, which is usually accessible from a public walkway, was "buttoned up pretty tight," and that there were security guards and "stanchions across the entrance."  [Mem. in Opp. to Plaintiff's Motion at 3-4 (quoting id., Exh. C (Depo. of Paul Klink ("Klink Depo.")), at 32-33).]  Further, the Kyo-ya Defendants assert, according to Okura and Chung, Plaintiff ran away from Okura when he first stopped him, and was combative and uncooperative when he was stopped the second time.  [Id. at 4 (citing id., Exh. B (Depo. of Aaron H. Okura ("Okura Depo.")), at 45-46, 51-52).]  According to the Kyo-ya Defendants, because Plaintiff was being uncooperative and was trespassing, Kyo-ya security guards decided to escort him to the security office; however, Plaintiff became

15

aggressive and began swinging his arms and legs wildly.  [Id. at 5 (citing Okura Depo. at 55-56; Klink Depo. at 58-59).]  The Kyo-ya Defendants state that, "[f]earing for his safety, as well as for the safety of others around him, Okura secured Plaintiff's left arm and wrestled him to the ground," after which Plaintiff was handcuffed, brought to his feet, and taken to the security office.  [Id. (citing Okura Depo. at 63, 68-69).]  The Kyo-ya Defendants note that Klink testified that he never saw any of the security guards kick or punch Plaintiff.  [Id. at 6 (citing Klink Depo. at 56).]

In light of these disputed facts, the Kyo-ya Defendants argue that the Court should not grant Plaintiff's Motion.

B.    **Reply**

In his reply, Plaintiff argues that, even if the Kyo-ya Defendants' version of the events is true, they were still not justified in touching him and forcibly taking him into the security office.  [Reply to Mem. in Opp. to Plaintiff's Motion at 1-2.]  Further, Plaintiff argues that, if he did flail his arms and legs, "he had an absolute right to do so[, as he] was being illegally attacked and abducted."  [Id. at 3.]  Plaintiff argues that he had the right to do whatever he could to try to escape, and that, "as the instigator of the offensive touching, Okura cannot claim self-defense."  [Id. at 4.]  Plaintiff argues that Okura had no justification for holding his arm and not letting

16

him leave the premises.   Plaintiff therefore asks the Court to grant his motion.

## STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## DISCUSSION

I.   **1983 Motion**

A.   **Section 1983: Under Color of Law**

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of law.

The Kyo-ya Defendants argue that they are not state actors and therefore cannot be held liable under § 1983.   As the Ninth Circuit has stated, "private parties are not generally acting under color of state law, and . . . '[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.'" Price v. State of Hawai`i, 939 F.2d 702, 708 (9th Cir. 1991) (some alterations in Price) (citing Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (citation omitted)). Individuals and private entities are not normally liable for

violations of most rights secured by the United States

Constitution.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 936

(1982).  The ultimate issue in determining whether a person is

subject to suit under § 1983 is whether the alleged infringement

of federal rights is fairly attributable to the government.

Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th

Cir. 1999) (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 838

(1982)).

     The Ninth Circuit recognizes a two-part test for

determining whether an act is "fairly attributable" to the

government.  First, the deprivation must result from a

governmental policy, or "must be caused by the exercise of some

right or privilege created by the [government] or a rule of

conduct imposed by the [government]."  Lugar, 457 U.S. at 937;

see also Sutton, 192 F.3d at 835.  Second, "the party charged

with the deprivation must be a person who may fairly be said to

be a [governmental] actor."  Lugar, 457 U.S. at 937.  The Ninth

Circuit has emphasized that "§ 1983 excludes from its reach

merely private conduct, no matter how discriminatory or wrong."

Sutton, 192 F.3d at 835 (quoting American Mfrs. Mut. Ins. Co. v.

Sullivan, 526 U.S. 40, 119 S.Ct. 977, 985 (1999) (citation and

internal quotation marks omitted)).

     When addressing whether a private party acted under

color of law, the court therefore starts with the presumption

that private conduct does not constitute governmental action. Id.; Price, 939 F.2d at 707-08.  In order for private conduct to constitute governmental action, "something more" must be present. See Lugar, 457 U.S. at 939 ("Action by a private party pursuant to this statute, without something more, was not sufficient to justify a characterization of that party as a 'state actor.'").

Courts have used a number of different tests to identify what constitutes this "something more," without settling on a single standard.  See id.; Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir. 1983) (citing cases).  Instead, courts "stress the necessity of a close nexus between the state and the challenged conduct rather than application of a mechanistic formula." Wagner v. Metro. Nashville Airport Auth., 772 F.2d 227, 229 (6th Cir. 1985); see also Grijalva v. Shalala, 152 F.3d 1115, 1119 (9th Cir. 1998) ("In order to show that a private action is in fact state action, the plaintiff must show that there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." (citation and internal quotation marks omitted)), vacated on other grounds by 526 U.S. 1096 (1999).

It is clear that a private person may become a state actor, and thus liable under § 1983, by conspiring with state officials, engaging in joint activity with state officials, or

becoming so closely related to the state that his actions can be said to be those of the state itself.  Price, 939 F.2d at 708; see also Lugar, 457 U.S. at 941 ("Private persons, jointly engaged with state officials in [a] prohibited action, are acting 'under color' of law for purposes of [§ 1983].  To act 'under color' of law does not require that the accused be an officer of the State.  It is enough that he is a willful participant in joint activity with the State or its agents." (quoting Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970))).  "Joint action[, however,] requires a substantial degree of cooperative action." Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989).

Here, it is clear that Officer Chung was acting under color of state law, and thus a state actor, during the incident. Chung was employed as a Honolulu police officer, and working in a special duty capacity at the Kyo-ya property at the time of the incident.[5]  [Chung Decl. at ¶ 3.]  Plaintiff alleges that "Chung was wearing clothing that identified him as an officer of the Honolulu Police Department and was in possession of equipment issued to him by the Honolulu Police Department."  [Fourth Am.

---

[5] The Court notes that, after the hearing on the instant motions, Plaintiff submitted Additional Exhibits demonstrating that Chung was paid by Kyo-ya for his services as a special duty officer on the night in question.  [Dkt. no. 155.]  For purposes of the instant motions, however, the Additional Exhibits do not alter the Court's analysis regarding Chung's status as a state actor, or the degree of cooperation between Chung and the Kyo-ya Defendants.

Complaint at ¶ 38.]  When Chung approached Plaintiff and Okura during the initial stop of Plaintiff, he was acting in the performance of his police duties, investigating what appeared to be Plaintiff's unauthorized entry onto the premises and attempt to avoid Okura thereafter.  [Chung Decl. at ¶¶ 4-5.]  As such, it is clear that Officer Chung was acting in his official capacity as a Honolulu police officer at the point of Plaintiff's initial stop, and was therefore a state actor for purposes of § 1983. See West v. Atkins, 487 U.S. 42, 49-50 (1988) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.").

        Because Officer Chung was a state actor, Plaintiff may bring his § 1983 suit against the Kyo-ya Defendants as state actors if he can demonstrate that they conspired with Officer Chung, or otherwise cooperated and engaged in a joint activity with him.  Price, 939 F.2d at 708.  The Court finds, however, that Plaintiff has failed to demonstrate the requisite degree of cooperation between the Kyo-ya Defendants and Chung to transform the private actors into state actors for purposes of § 1983 liability.  Plaintiff does not allege that Chung himself inflicted any physical harm on Plaintiff, but, rather, that his presence converted the episode into one of state action.  In support of his argument that the Kyo-ya Defendants and Officer

21

Chung acted jointly, Plaintiff alleges that Chung stood in front of Plaintiff and "thwarted" his efforts to get away from Okura, that Chung "exhibited hostility toward Plaintiff," "engaged in making demands on Plaintiff," and that he failed to intercede, thus emboldening the Kyo-ya Defendants and "tacitly g[iving his] approval" of their actions. [Fourth Am. Complaint at ¶¶ 26, 42-51; Mem. in Opp. to 1983 Motion at 4-6.]

The Court finds, however, that Plaintiff's conclusory allegation that the Kyo-ya Defendants were somehow "emboldened" by Officer Chung's presence, while imaginative, is simply insufficient.  Plaintiff does not allege any facts suggesting that Officer Chung and the Kyo-ya Defendants conspired to act in concert, or were otherwise in a relationship that could properly be considered so "symbiotic" that the actions of the Kyo-ya Defendants could "be said to be those of the State itself." See Price, 939 F.2d at 708 (citing Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961); Vincent v. Trend W. Technical Corp., 828 F.2d 563, 569 (9th Cir. 1987)).  On the night of the incident, Chung was serving as a special duty officer assigned to the Kyo-ya property by HPD.  Even when viewed in the light most favorable to Plaintiff, there is no evidence that the Kyo-ya Defendants had control over HPD's selection of Chung for the assignment to the Kyo-ya property, nor is there any evidence that the Kyo-ya Defendants and Chung had any discussions prior to

22

Plaintiff's detention regarding a plan or conspiracy to violate Plaintiff's rights.

While Plaintiff asserts a number of times that Officer Chung was "instrumental in Plaintiff's being in jeopardy of an attack by others," [Mem. in Opp. to 1983 Motion at 5,] Plaintiff fails to set forth specific facts to support this allegation.  As such, the Court finds that Plaintiff has failed to demonstrate that the Kyo-ya Defendants were acting as state actors for purposes of § 1983 liability.

The Court therefore GRANTS the 1983 Motion and DISMISSES Plaintiff's § 1983 claims as against the Kyo-ya Defendants.

## II.  <u>Chung's Motion</u>

Chung asks the Court to dismiss the remaining counts in the Fourth Amended Complaint against him (Counts 3 (state law claims for assault, battery, IIED, false imprisonment, and wrongful detention), 4 (§ 1983 deprivation of liberty claim), and 5 (§ 1983 failure to intercede claim)).

### A.  <u>Count 3 (State Law Tort Claims)</u>

Count 3 alleges the common law torts of "assault, battery, intentional infliction of emotional distress, false imprisonment, and wrongful detention against Defendants Kyo-ya Resorts and Hotels, Okura and Chung." [Fourth Am. Complaint at 4.]

Plaintiff does not, however, allege that Officer Chung himself took any physical action against Plaintiff.  As such, as this district court stated in its 11/13/12 Order, to prevail as to Count 3, Plaintiff must demonstrate that Chung aided or abetted Okura, or that he engaged in a civil conspiracy with Okura.  Bracken, 2012 WL 5493997, at *3-4.  In order for Plaintiff to establish a civil conspiracy, he must demonstrate that Okura and Chung undertook "concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai`i 224, 252 n.28, 982 P.2d 853, 991 n.28 (1999) (quoting Duplex Printing Press Co. v. Deering, 254 U .S. 443, 466 (1921)).

Plaintiff alleges that Chung "thwarted Plaintiff's effort to get away from Defendant Okura," [Fourth Am. Complaint at ¶ 26,] that his repeated requests for identification "set the stage for the attack," and that Chung's actions and demeanor "emboldened" the Kyo-ya Defendants, encouraging them to commit the alleged state law violations.  [Mem. in Opp. to Chung's Motion at 3-4.]

The Court finds that these conclusory allegations, absent more, are insufficient to support a finding that Chung was engaged in a civil conspiracy with Okura, or that Chung otherwise aided and abetted the Kyo-ya Defendants.  Plaintiff has put

24

forward no specific facts establishing the existence of an agreement between the parties to act in concert with respect to their treatment of Plaintiff, or establishing the purpose or object of the alleged conspiracy.  Plaintiff's allegations that Officer Chung participated in the initial stop, "thwarting" Plaintiff's escape and asking Plaintiff for identification, are simply not enough to demonstrate that Chung and Okura were acting together pursuant to a plan the purpose of which was to violate Plaintiff's rights.  Further, Plaintiff's allegation that Chung's presence encouraged or emboldened the Kyo-ya Defendants similarly does not demonstrate that any conspiracy existed.  As such, Count 3 must fail as against Officer Chung.

The Court therefore GRANTS Chung's Motion as to Count 3.

**B.    Count 4 (§ 1983 Unlawful Seizure)**

As to Plaintiff's § 1983 claims against Officer Chung, "[t]he court construes [Plaintiff's] claims in Counts 4 and 5 as alleging two distinct violations of his Fourth Amendment rights. First, [Plaintiff] alleges that Chung deprived him of his 'liberty and freedom.'  This appears to be an allegation of unlawful 'seizure' in violation of the Fourth Amendment.  Second, Count 5 alleges that Chung breached a duty to stop Okura from using excessive force." Bracken, 2012 WL 5493997, at *5 (citing Fourth Am. Complaint at ¶¶ 39, 41-51).

As to Count 4, Chung argues that he is entitled to summary judgment because he did not participate in the alleged violations of Plaintiff's constitutional rights, and Plaintiff makes no allegation that Chung took any affirmative action against him or personally caused him injury.

The Ninth Circuit has made clear that "[a] person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (internal quotation marks omitted) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  As such, a police officer who is merely a bystander to his colleagues' conduct cannot be found to have caused any injury.  Hopkins v. Bonvicino, 573 F.3d 752, 770 (9th Cir. 2009); see also Chuman v. Wright, 76 F.3d 292, 295 (9th Cir. 1996) (rejecting a jury instruction that allowed the jury to "lump all the defendants together, rather than require it to base each individual's liability on his own conduct").  Instead, a plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation."  Jones v. Williams, 297 F.3d 930, 935 (9th Cir. 2002); see also Torres v. City of Los Angeles, 548 F.3d 1197, 1206 (9th Cir. 2008).

26

Officers who are "integral participants" in a
constitutional violation are potentially liable under § 1983,
even if they did not directly engage in the unconstitutional
conduct themselves.  Boyd v. Benton Cnty., 374 F.3d 773, 781 (9th
Cir. 2004).  Officers are not, however, integral participants
simply by the virtue of being present at the scene of an alleged
unlawful act.  Jones, 297 F.3d at 936.  Instead, integral
participation requires some fundamental involvement in the
conduct that allegedly caused the violation.  Id.

Officers are fundamentally involved in an alleged
violation when they provide some affirmative physical support at
the scene of the alleged violation, and they are aware of the
plan to commit the alleged violation or have reason to know of
such a plan, but do not object.  Boyd, 374 F.3d at 780; see also
Monteilh v. Cnty. of Los Angeles, 820 F. Supp. 2d 1081, 1090
(C.D. Cal. 2011) (finding that "the Officers' presence . . . is
insufficient to establish integral participation if the Officers
have no knowledge of or reason to know of an unlawful act").
Additionally, officers may be integral participants even if they
have no knowledge of a plan to commit the alleged violation if
their physical participation in the alleged violation was part of
a closely related series of physical acts leading to the
violation.  Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12
(9th Cir. 2007) (holding that officers who tackled and handcuffed

a plaintiff were integral participants in the use of hobbling restraints, which were applied by one officer after the initial tackling and handcuffing occurred).

Here, Plaintiff argues that Officer Chung was an "integral participant" in the alleged violations of his constitutional rights.  Specifically, Plaintiff asserts that Officer Chung "thwarted" Plaintiff's ability to retreat from Okura during the initial stop, and then was "instrumental" in the alleged subsequent "takedown" and assaults by the Kyo-ya security guards.  The Court addresses each of the two stages of the incident in turn.

### 1.  __The Initial Stop__

Plaintiff alleges that Chung violated his Fourth Amendment rights by assisting Okura in unlawfully detaining him, specifically, by "thwarting" Plaintiff's ability to get away from Okura, and by repeatedly demanding that Plaintiff provide some form of identification.  [Fourth Am. Complaint at ¶¶ 26-27, 44.] Plaintiff asserts that Chung was thus an integral participant in Plaintiff's initial stop and allegedly unlawful detention.  Chung admits that he approached Okura and Plaintiff, that he was told by Okura that Plaintiff had not paid the admission fee and was to be issued a trespass warning, and that he asked Plaintiff to produce his identification.  [Chung's CSF at ¶ 3; Chung Decl. at ¶ 5.]  The video recording of the incident taken by Plaintiff

28

confirms that Officer Chung was present and standing in front of Plaintiff during the initial stop, and that he requested identification from Plaintiff, demonstrating that Officer Chung was clearly a knowing participant in the stop. [Stipulation Admitting Video-recording into Evidence, Exh. A (video recording), filed 12/19/12 (dkt. no. 110).] In light of these facts, the Court FINDS that Officer Okura was an "integral participant" in the initial stop of Plaintiff and, thus, may be subject to liability under § 1983 for any alleged constitutional violations that occurred during the stop.

### 2. The Subsequent "Takedown" and Assaults

Plaintiff alleges that, after the initial stop, Okura and other Kyo-ya security guards "attacked and assaulted" Plaintiff, "hurled Plaintiff to the ground," "pinched Plaintiff in the face," "restrained Plaintiff's freedom, abducted him and injured him," and "dragg[ed] him considerable distance to [the Kyo-ya security] office." [Fourth Am. Complaint at ¶¶ 31-35.] Plaintiff does not allege that Officer Chung physically participated in the alleged takedown or assaults, or in the Kyo-ya Defendants' actions in dragging Plaintiff to the Kyo-ya security office. Plaintiff nevertheless argues that Chung's presence "was instrumental in Plaintiff's being in jeopardy of an attack by others," and encouraged the Kyo-ya security guards to assault Plaintiff. [Id. at ¶¶ 43, 47; Mem. in Opp. to Chung's

Motion at 4.]

Plaintiff's argument that Officer Chung's mere presence encouraged the Kyo-ya Defendants to assault Plaintiff, absent more, is simply insufficient for a finding that Officer Chung was an integral participant in the alleged takedown and assaults.  As discussed above, in order for Officer Chung to be deemed an integral participant, he must (1) have "provide[d] some affirmative physical support at the scene of the alleged violation," *and* been "aware of the plan to commit the alleged violation or have reason to know of such a plan, but [did] not object."  See Monteilh, 820 F. Supp. 2d at 1089 (citing Boyd, 374 F.3d at 780).  Plaintiff does not allege that Officer Chung physically participated in the assaults in any manner.  As such, he clearly did not provide any "affirmative physical support" for the alleged violation.  See id.  Further, Plaintiff has not provided sufficient evidence demonstrating that Chung knew or had reason to know that the Kyo-ya Defendants were planning to assault Plaintiff.  Plaintiff's conclusory allegations that Chung "saw that Defendant Okura was going to assault him," and that Chung "tacitly gave approval to the others to go through with the assault," [Fourth Am. Complaint at ¶¶ 48-49,] are simply insufficient to demonstrate that Chung had specific knowledge going into the encounter that the Kyo-ya Defendants planned to take down, assault, drag, and unlawfully detain Plaintiff.

30

As such, the Court FINDS that Chung was not an "integral participant" in the alleged takedown and subsequent assaults such that he may be subject to § 1983 liability for those acts of the Kyo-ya Defendants.

### 3.  **Qualified Immunity**

Chung argues that, even if he is subject to § 1983 liability for some or all of the alleged unlawful acts, he is shielded from liability by qualified immunity.  "Qualified immunity entitles [police officers] not to stand trial or face the other burdens of litigation' on [a constitutional] claim, provided their conduct did not violate a clearly established federal right."  <u>Brooks v. City of Seattle</u>, 599 F.3d 1018, 1022 (9th Cir.), <u>reh'g en banc granted</u>, 623 F.3d 911 (9th Cir. 2010), <u>and on reh'g en banc sub nom.</u> <u>Mattos v. Agarano</u>, 661 F.3d 433 (9th Cir. 2011).

In determining whether an officer is entitled to the defense of qualified immunity, the Court asks two questions: (1) was there a violation of a constitutional right, and (2) was the right at issue "clearly established" such that it would have been clear to a reasonable officer that his conduct was unlawful in that situation?  <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001) (allowing courts the discretion to decide which step to consider first).  If an officer's action does not amount to a constitutional violation, or the right violated was not clearly

established, or the officer's action reflected a reasonable mistake about what the law requires, the officer is entitled to qualified immunity.  See Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007).

Here, as discussed above, Chung may be subject to § 1983 liability for the initial stop of Plaintiff and, as such, the constitutional right in question is Plaintiff's Fourth Amendment right to be free from unreasonable seizure.  "It is quite plain that the Fourth Amendment governs 'seizures' of the person," even if they do not result in an arrest "in traditional terminology."  Terry v. Ohio, 392 U.S. 1, 16 (1968).  Nonetheless, the protections of the Fourth Amendment only extend to unreasonable seizures.

Determining whether "a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  Graham v. Connor, 490 U.S. 386, 396 (1989) (some internal quotation marks omitted).  While the "reasonableness" inquiry "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," the inquiry is always an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting

them, without regard to their underlying intent or motivation."
Id. at 397.

Here, the issue is whether Officer Chung's actions
during Okura's initial stop of Plaintiff were reasonable.  As
discussed above, Plaintiff asserts that Chung "thwarted" his
ability to retreat from Okura, and that Chung repeatedly asked
him for his identification.  [Fourth Am. Complaint at ¶¶ 26, 42-
50.]  Such allegations, absent specific facts indicating some
abusive or otherwise unreasonable conduct, are insufficient to
demonstrate that Chung acted unreasonably under the
circumstances.  Chung has stated that he approached Plaintiff and
Okura after seeing Plaintiff appear to hop over a rope and enter
the private event without permission, and attempt to evade Okura
shortly thereafter.  [Chung Decl. at ¶¶ 4-5.]  Chung was then
told by Okura that Plaintiff had entered the premises without
permission, that he did not have a wristband indicating that he
had paid the admission fee, and that Okura wished to issue
Plaintiff a trespass warning.  [Id. at ¶ 5.]  In light of these
facts, the Court cannot conclude that Chung acted unreasonably
when he detained Plaintiff and asked him for identification.
See, e.g., Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified
immunity protects "all but the plainly incompetent or those who
knowingly violate the law"); Mitchell v. Forsyth, 472 U.S. 511,
528 (1985) (officials are immune unless "the law clearly

33

proscribed the actions" they took).

The Court therefore FINDS that Chung is entitled to qualified immunity.  As such, the Court GRANTS Chung's Motion as to Count 4.

### C.   Count 5 (§ 1983 Failure to Intercede)

As discussed above, Plaintiff alleges that, after the initial stop, Okura and other Kyo-ya security guards "attacked and assaulted" Plaintiff, "hurled Plaintiff to the ground," "pinched Plaintiff in the face," "restrained Plaintiff's freedom, abducted him and injured him," and "dragg[ed] him considerable distance to [the Kyo-ya security] office."  [Fourth Am. Complaint at ¶¶ 31-35.]  In Count 5, Plaintiff further alleges that Chung's failure to intercede to stop these alleged violations violated Plaintiff's Fourth Amendment right to be free from the use of excessive force.  [Id. at ¶¶ 41-51.]

This Court recognizes that "government officials generally are not liable under section 1983 for their failure to protect citizens from dangerous situations which state officials neither created nor exacerbated."  Escamilla v. City of Santa Ana, 796 F.2d 266 (9th Cir. 1986).  Police officers do, however, have "a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen."  United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988); Byrd v.

<u>Clark</u>, 783 F.2d 1002, 1007 (11th Cir. 1986); <u>Bruner v. Dunaway</u>, 684 F.2d 422, 425–26 (6th Cir. 1982), <u>cert. denied</u>, 459 U.S. 1171 (1983); <u>Putnam v. Gerloff</u>, 639 F.2d 415, 423 (8th Cir. 1981); <u>Byrd v. Brishke</u>, 466 F.2d 6 (7th Cir. 1972)), <u>rev'd on other grounds</u>, 518 U.S. 81 (1996).  Thus, to the extent Okura may be considered Chung's "fellow officer," Chung may have had a duty to stop Okura.

As discussed above, however, Plaintiff has failed to set forth facts sufficient to demonstrate the kind of cooperation and/or conspiracy necessary for a finding that the Okura, a private party, may be considered a state actor for purposes of § 1983 liability.  As such, it is clear that Okura cannot fairly be characterized as Chung's "fellow officer."  Plaintiff's failure to intercede claim must therefore fail as well.  The Court therefore GRANTS Chung's Motion as to Count 5.

**D.  Punitive Damages**

Under Hawai`i law, punitive damages may be awarded only upon a showing that a defendant has acted wantonly, oppressively, or maliciously.  <u>Quedding v. Arisumi Bros., Inc.</u>, 66 Haw. 335, 340, 661 P.2d 706, 710 (1983); <u>Kang v. Harrington</u>, 59 Haw. 652, 660, 61, 587 P.2d 285 (1978).  Plaintiff has the burden of proving his claim for punitive damages by clear and convincing evidence.  <u>Masaki v. Gen. Motors Corp.</u>, 71 Haw. 1, 16–17, 780 P.2d 566, 575 (1989).

Here, Plaintiff has not put forth any evidence suggesting that Chung's actions rose to the level of "outrageousness" on the night in question, or that Chung was motivated by malice or an otherwise improper purpose.  Upon seeing Plaintiff at the private event and suspecting that he was unauthorized to be there, Chung approached Plaintiff and Okura. After Okura confirmed Chung's suspicion that Plaintiff was trespassing, Chung stood in front of Plaintiff and asked him for his identification.  [Chung's CSF at ¶ 3; Chung Decl. at ¶ 5.] Chung's actions in "thwarting" Plaintiff's ability to leave and repeatedly asked him for identification simply do not constitute the type of wanton, oppressive, or malicious conduct necessary for an award of punitive damages.

As such, the Court GRANTS Chung's Motion as to Plaintiff's claim for punitive damages.

### III. **Plaintiff's Motion**

Plaintiff seeks partial summary judgment on his state law claims of assault, battery, and abduction against the Kyo-ya Defendants (Count 3).  The Kyo-ya Defendants argue that Plaintiff's Motion must be denied because questions of fact exist as to what exactly happened on the night in question.  The Court agrees.

While Plaintiff claims that he was unaware that Rumfire was not open to the public on December 31, 2009, and that he

unwittingly walked onto the property with no intention of trespassing, [Fourth Am. Complaint at ¶¶ 14-17,] the Kyo-ya Defendants claim that it was clear that Rumfire was closed to the public, and that Plaintiff purposefully entered the premises without authorization by hopping over a rope barrier, [Okura Depo. at 34; Klink Depo. at 32-33].  As such, there is clearly a disputed issue of fact as to whether Plaintiff intentionally trespassed or merely accidentally stumbled onto the Kyo-ya property.

Further, the Kyo-ya Defendants argue that Plaintiff "caused a scene," was uncooperative, and "became aggressive and began swinging his arms wildly in a backwards motion," such that Okura felt that he had to "wrestle[] him to the ground" for safety reasons.  [Kyo-ya Defendants' Mem. in Opp. to Plaintiff's Motion at 5 (citing Okura Depo. at 55-56, 63, 68-69).]  Plaintiff asserts, however, that he was not resisting or being aggressive, but that, rather, he was imploring the Kyo-ya Defendants to let him leave the premises of his own accord.  [Plaintiff's Concise Statement in Supp. of Plaintiff's Motion at ¶ 1.]  As such, there is clearly a factual dispute as to what immediately preceded Officer Chung's "takedown" of Plaintiff.

Taking just these two examples of factual disputes into account, it is clear that the parties have two very different accounts of what happened between them.  Further, Plaintiff's

37

video recording cannot resolve the factual disputes, as it does not capture the beginning of the encounter between the parties, and it goes black after a little less than two minutes of footage; the rest of the thirty-seven minute video is simply an audio recording.  In light of the existence of significant factual disputes as to Plaintiff's state law claims against the Kyo-ya Defendants in Count 3 of the Fourth Amended Complaint, the Court concludes that summary judgment on those claims is inappropriate at this time.

The Court therefore DENIES Plaintiff's Motion.

## CONCLUSION

On the basis of the foregoing, the Court (1) GRANTS the Kyo-ya Defendants' Motion for Partial Summary Judgment on Plaintiff's Claims Under 42 U.S.C. § 1983, filed December 18, 2012, [dkt. no. 103;] (2) GRANTS Defendant Chung's Motion for Summary Judgment, filed December 18, 2012, [dkt. no. 104;] and (3) DENIES Plaintiff's Motion for Partial Summary Judgment, filed December 18, 2012, [dkt. no. 107].

As such, the Court GRANTS summary judgment as to all claims in the Amended Complaint against Defendant Chung, and GRANTS summary judgment as to the § 1983 claims against the Kyo-ya Defendants.  Plaintiff's state law claims against the Kyo-ya Defendants remain before the Court.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 24, 2013.



    /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

DILLON BRACKEN V. KYO-YA HOTELS AND RESORTS, ET AL; CIVIL NO. 11-00784 LEK-BMK; ORDER (1) GRANTING DEFENDANT AND COUNTERCLAIM PLAINTIFF KYO-YA AND DEFENDANT AARON OKURA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983, (2) GRANTING DEFENDANT KINCHUNG CHUNG'S MOTION FOR SUMMARY JUDGMENT, AND (3) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT